UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| COREPEX TECHNOLOGIES, INC., | Civil Action No. 1:17cv26 |
| Plaintiff, | |
| vs. | Alexandria, Virginia |
| | September 1, 2017 |
| WH ADMINISTRATORS, INC., | 10:11 a.m. |
| Defendant. | |

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:  ELLIS L. BENNETT, ESQ.
BEN BARLOW, ESQ.
Dunlap Bennett & Ludwig PLLC
211 Church Street SE
Leesburg, VA 20175

FOR THE DEFENDANT:  GREGORY O. OLANIRAN, ESQ.
J. MATTHEW WILLIAMS, ESQ.
ALESHA DOMINIQUE, ESQ.
Mitchell Silberberg & Knupp LLP
1818 N Street, N.W., 8th Floor
Washington, D.C. 20036
  and
NICHOLAS R. JOHNSON, ESQ.
Berenzweig Leonard, LLP
8300 Greensboro Drive, Suite 1250
McLean, VA 22102

ALSO PRESENT:  JOHN RIGOLI

OFFICIAL COURT REPORTER:  ANNELIESE J. THOMSON, RDR, CRR
U.S. District Court, Fifth Floor
401 Courthouse Square
Alexandria, VA 22314
(703)299-8595

(Pages 1 - 12)
COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1                      P R O C E E D I N G S
 2              THE CLERK:  Civil Action 17-26, Corepex Technologies,
 3   Inc. v. WH Administrators, Inc.  Would counsel please note
 4   their appearances for the record.
 5              MR. JOHNSON:  Good morning, Your Honor.  Nicholas
 6   Johnson on behalf of WH Administrators.
 7              THE COURT:  Good morning.
 8              MR. OLANIRAN:  Good morning, Your Honor.  Greg
 9   Olaniran on behalf of WH Administrators.
10              THE COURT:  All right.
11              MR. WILLIAMS:  Good morning.  Matthew Williams on
12   behalf of the defendant.
13              MS. DOMINIQUE:  Good morning.  Alesha Dominique on
14   behalf of the defendant.
15              THE COURT:  Way too many lawyers on this case, all
16   right.
17              MR. BENNETT:  Good morning, Your Honor.  Ellis
18   Bennett and Ben Barlow here for the plaintiffs.
19              MR. BARLOW:  Good morning.
20              THE COURT:  Good morning.
21         Did you-all meet with Judge Nachmanoff?  Was there
22   ever an effort to settle this matter?
23              MR. OLANIRAN:  Yes, we did very early on, actually
24   right after --
25              THE COURT:  The last time you were before me.
```

1     MR. OLANIRAN: No, before then. When we appeared
2  before you with regard to the motion to dismiss, you sent us to
3  Judge Nachmanoff, and we had a discussion.
4     THE COURT: How long did you-all meet? How long did
5  that conference go?
6     MR. OLANIRAN: I would say probably about two to
7  three hours, I think.
8     THE COURT: And did you make any progress at all?
9     MR. OLANIRAN: None at all, Your Honor.
10    THE COURT: No movement by either side?
11    MR. OLANIRAN: None, Your Honor.
12    MR. BENNETT: Your Honor, if I may --
13    THE COURT: All right, I don't need everybody
14 standing. One at a time at the lectern.
15    All right, I'll hear from the plaintiff.
16    MR. BENNETT: Your Honor, if I may, the difficulty --
17    THE COURT: Switch positions at the lectern.
18    MR. BENNETT: I'm sorry, Your Honor.
19    THE COURT: Yeah. No, that's where you go.
20    MR. BENNETT: One difficulty with that meeting is
21 Mr. Turner, the principal of WHA, did not appear for the
22 mediation, and I think that was a big factor in why we didn't
23 get anywhere that day. Mr. Rigoli, who is with us here today,
24 along with Mr. Clark were there, and we had difficulty getting
25 anywhere that day.

1  THE COURT: Now, you're before Judge Bellows in state
2  court?
3  MR. BENNETT: Your Honor, we're not sure who our
4  trial judge will be. Judge Bellows did hear the demurrers in
5  the case, but Fairfax may assign it to a different trial judge
6  a day or two before the trial starts.
7  THE COURT: Where are you in terms of the state
8  litigation?
9  MR. BENNETT: Well, Your Honor, Mr. Johnson's firm
10 entered an appearance in that case yesterday. We, we have an
11 October 30 trial date, and we're set to go in that case. They
12 also disclosed an expert yesterday.
13 So we're going to take a few depositions, I think,
14 tentatively the last couple weeks of September, and then that
15 case is relatively straightforward on the breach of contract, I
16 think. So --
17 THE COURT: The interesting thing, and I believe I
18 mentioned it last time, with this interim contract that you-all
19 had, which was really the real problem here because it didn't
20 clearly delineate what everybody's understanding of all the
21 factors would be, is that it only provides for the recovery of
22 attorneys' fees, as I understand it, for Corepex, if there's a
23 breach of contract action, which I think is very interesting
24 and unusual.
25 In any case, the reason I asked about the state

1 proceeding is that obviously, it plays into the res gestae of
2 this proceeding, and I do think it's unfortunate, as I said
3 last time, that two ongoing, reputable companies are unable to
4 reach a business solution in a case like this, where one party
5 hires the other to do work for them, the other party does do
6 work, is paid a significant amount of money for the work but
7 perhaps not everything it thought it was entitled to, and then
8 we have this falling out over the work that was done and who
9 owns it or who has the right to use it.
10      I would love to see you-all settle and -- because,
11 you know, in some respects, today is judgment day, and
12 sometimes if I think parties have any potential for settling, I
13 withhold judgment to give them an incentive to get to the table
14 and work it out, because an amicable settlement in a case like
15 this saves so much time and money, gives everybody certainty,
16 and you can go on with your businesses.
17      Does either side think there's any potential that
18 sitting down and working this case out might still happen?  If
19 not, I'm not going to -- I'll rule today.  I know what I'm
20 going to do.  I've read your briefs, and I'm going to announce
21 the judgment today, but I'm prepared to give you one more
22 window in part to also save the state court the time and money
23 and judicial resources having to try the state case.
24      I would think that it will take several days to try
25 this case just given the complexity of the issues.  Even though

1  it's breach of contract, I am assuming that there's going to be
2  all sorts of issues about what work was done, what was paid
3  for, what it was possibly worth.
4          So I mean, I think there's a real incentive in terms
5  of the defendant, you're going to be eating those attorneys'
6  fees, I don't see any way you recover them in state court, and,
7  you know, there's always the risk that the people will not get
8  anywhere near the judgment they're expecting.  I mean, Corepex
9  might win in state court, and you might get $100,000.  You want
10 a million, and you've spent -- you know, and you may or may not
11 get your attorneys' fees.
12          A lot of courts look at what the ad damnum is and
13 what the recovery is.  If I see a 10 percent recovery on a
14 case, I don't award anywhere near the attorneys' fees that were
15 involved with that.
16          So, I mean, I'm just saying, is there a genuine
17 interest or thought that this litigation could be resolved?  Do
18 you-all want to talk for a few minutes?
19          MR. BENNETT:  Your Honor, I note from our
20 perspective, we've always been open to do a resolution through
21 settlement with a reasonable offer.
22          THE COURT:  Have you ever made a demand on WH to, you
23 know, what it would take for you-all to be satisfied?  It can't
24 be 100 percent on the dollar.  Nobody settles for 100 percent
25 on the dollar.

1     MR. BENNETT: We did at the mediation, and I think, I
2  think our demand probably was something like that, but we
3  certainly had room to move back in, I think, February or March,
4  when we did that mediation. Mr. Rigoli, I know from having
5  talked to him about this case several times, is open to -- and
6  I agree with you, Your Honor, this is a case that I would think
7  should have a reasonable business resolution from both sides,
8  and we're certainly open to that.
9     THE COURT: Let me hear from you.
10    MR. OLANIRAN: Your Honor, given our experience
11 during mediation with Judge Nachmanoff, I don't think the
12 parties were even remotely close with regard to the numbers
13 that --
14    THE COURT: But did you make a counteroffer of any
15 kind? The demand was made. Did you make any kind of a counter
16 and say, you know --
17    MR. OLANIRAN: Yes, we did, Your Honor, but it was
18 not acceptable. And I'm kind of surprised, the fact that
19 Mr. Turner, who's the CEO for WH Administrators, was not there
20 didn't make a difference because we did have a representative
21 from WHA that was with us at the mediation, so -- that had
22 authority to make offers and respond to offers, so that
23 shouldn't have made a difference at all.
24    THE COURT: Well, I mean, I never force -- well,
25 sometimes I do, but I usually don't force people to settle or

1  to try to settle, and I'm not going to force it on you today,
2  but you understand I can only resolve today a portion of your
3  overall, what I'll call the global problem.  You still have the
4  problem in state court, and for you-all, the meter is going to
5  run.
6          MR. OLANIRAN:  We understand that, Your Honor, and --
7  but given our experience during the mediation, given how the,
8  the case has played out in terms of what, what the experts are
9  saying the damages are and things of that nature, I don't think
10 there really is -- we haven't seen a genuine opportunity or
11 interest in settling.
12         THE COURT:  All right.  Well, unfortunately,
13 sometimes if the initial demand is just too harsh, I mean, in
14 my experience, I've brought people -- and I can't settle this
15 case because I'm set to try it as a bench trial, but, I mean,
16 I've seen cases where the parties were 2 or 300 million apart
17 and we got them to settle.
18         So the real question is not so much, you know, how
19 ridiculous the plaintiff's demand may be at this point.  The
20 real question is is there a genuine interest on the defendant's
21 part to try to resolve what I would say the state matter, that
22 is, how much money the plaintiff should be getting, and to
23 fully clarify your property rights in the software, because
24 that's, I think, ultimately what's going on here, and, you
25 know, you need to think about whether it's worth trying to work

1  this out, plus just to stop the meter running, but if you're
2  not interested, then I'll just go ahead and resolve the case
3  today.
4             MR. OLANIRAN:  Without going into the details of the
5  mediation discussions, I think a lot of the discussion that
6  took place actually contemplated some of the principles that
7  you just articulated.
8             THE COURT:  I'm sorry?
9             MR. OLANIRAN:  I said a lot of the discussion that
10 took place during the mediation covered some of the principles
11 that you just talked about just now.
12            THE COURT:  All right.
13            MR. OLANIRAN:  Without getting into the details of
14 the mediation.
15            THE COURT:  Yes, sir?
16            MR. BENNETT:  Your Honor, if I may, I think their
17 only offer to us was a walk-away, if I recall correctly, and I
18 don't think they would come up from that, so that's why we were
19 so far apart, regardless of what our initial demand was.
20            We expressed to Judge Nachmanoff we had room to move
21 certainly because we recognize the expenses, but we just, we
22 didn't get anything that we could even work with that day, and,
23 you know, we do think it would have made a difference if
24 Mr. Turner had been there.
25            MR. OLANIRAN:  But again, Your Honor, without getting

10

1    into the decision, the, the offer, as I recall, was way more

2    than 100 percent of what's being owed, and certainly when you

3    look at the damages expert's report, it's either very close to

4    or way beyond what was being offered in settlement.

5                So I wish I could stand before you and say that there

6    is a genuine opportunity to settle, but from the way that we

7    see the case thus far, we don't think there is.

8                THE COURT:  All right.  Well, I mean, I know that the

9    state courts also have mediation programs, so if you don't

10   settle it now, you can certainly try to settle it there.  But

11   in terms of the motions for summary judgment, so, the motion

12   for summary judgment issues in this case, where we have both

13   sides filing for summary judgment, we've looked carefully at

14   your briefs.  I'm not going to hear any argument on this

15   because I'm satisfied in this case that the plaintiff's motion

16   for summary judgment should be denied.

17               In this case, there is no question in my mind that

18   the plaintiff was hired to provide software services to enable

19   the defendant to develop these programs that would enable it to

20   handle this medical information, that much of the information

21   that the plaintiffs got in order to develop these programs came

22   from the defendant, and I actually think it's rather

23   interesting because under the interim agreement that you-all

24   had, there was a requirement that the receiver of, quote,

25   confidential information at the end of the contract return it.

11

1            And I know that the plaintiff went out right after
2    the lawsuit was filed in state court and got copyrights for
3    these two programs that are at issue.  I wonder whether any of
4    the information in those copyrights could arguably be
5    information that should have been returned to the defendant,
6    which is one of the reasons why I think this case should
7    settle, because there are problems on both sides here.
8            But I am satisfied under the law that applies to
9    this case that given the significant amount of money, over
10   $2 million, that was paid by the defendant to obtain this
11   software and given the nature of the interim agreement, which
12   did describe in some detail the type of work that the plaintiff
13   would be doing, I do not find that the plaintiff invested a
14   sufficient amount of its own proprietary information in
15   developing those programs that would justify them in arguing --
16   or in being able to win the issue about whether or not there is
17   at the very least a permanent, nonexclusive license for the
18   defendant to be able to use those programs.
19           And so to the extent that the plaintiff has raised
20   claims of copyright infringement or contributory copyright
21   infringement, I do not find that there is a basis for any of
22   those three claims, and so I am granting judgment in favor of
23   the defendant.
24           I'm not finding the defendant is an owner of those
25   copyrights, although I think there's some question in my own

```
                                                                  12
 1   mind about the legitimacy of those two copyright applications,
 2   but I am finding that there clearly under the facts of this
 3   case, that there is the nonexclusive permanent license for the
 4   defendants to use those copyrights, and so for that reason,
 5   judgment is going to be entered in favor of the defendant.
 6           Thank you, gentlemen.  We'll recess court for the
 7   day.
 8           MR. OLANIRAN:  Thank you, Your Honor.
 9           MR. BENNETT:  Thank you.
10                              (Which were all the proceedings
11                               had at this time.)
12
13                    CERTIFICATE OF THE REPORTER
14      I certify that the foregoing is a correct transcript of
15   the record of proceedings in the above-entitled matter.
16
17
18                                       /s/
                                 Anneliese J. Thomson
19
20
21
22
23
24
25
```