IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| COREPEX TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:17-cv-26 (LMB/MSN) |
| WH ADMINISTRATORS, INC., | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Before the Court is defendant WH Administrators' ("WHA" or "defendant") Motion for Attorney's Fees [Dkt. No. 113], in which WHA asks the Court to award it $1,382,567.90 in attorney's fees and $171,432.84 in costs. Plaintiff Corepex Technologies ("Corepex" or "plaintiff") argues that WHA is not entitled to attorney's fees, that the amount of WHA's fee request is unreasonable, and that the Copyright Act does not allow for the imposition of nontaxable costs. For the reasons that follow, defendant's motion will be DENIED.

I. BACKGROUND

In this civil action, Corepex alleged that after the parties' contractual relationship broke down, WHA committed copyright infringement by continuing to use two software programs, ETR and ETRC, that Corepex had developed for WHA. See Compl. [Dkt. No. 1] ¶¶ 16-19. WHA asserted a variety of defenses, including that it has a nonexclusive, implied license to continue using the software. Def. Sum. Judg. Mem. [Dkt. No. 65] 21-24.

WHA is a company that helps employers administer their health insurance programs, including by tracking employee eligibility for benefits under the Patient Protection and Affordable Care Act. See id. at 2; Pl. Sum. Judg. Opp. [Dkt. No. 100] 5; Turner Decl. [Dkt. No.

67] ¶ 2. As such, WHA maintains databases of employment and healthcare information for thousands of its customers' employees. See Def. Sum. Judg. Mem. 2; Pl. Sum. Judg. Opp. 5; Turner Decl. ¶ 2. Corepex is an information technology ("IT") company that provides a variety of software development, IT consulting, and related services to clients. See Def. Sum. Judg. Mem. 2-3; Pl. Sum. Judg. Opp. 5; Compl. Ex. 1 [Dkt. No. 1-1] (Interim Independent Contractor Agreement) 1.

Corepex and WHA's relationship began in early 2015. Around that time, WHA's CEO, Brendan Turner ("Turner"), was worried that WHA's internal processes for managing customers' information were too slow to allow the business to grow in the way that he wanted. See Turner Decl. ¶ 5. Turner began reviewing various existing software products and meeting with providers to see if they would satisfy WHA's needs. See id. In January 2015, WHA suffered a server malfunction that cut off access to its database. See id. WHA's IT Director, Gilbert Veney, recommended hiring Corepex to restore the data and set up a new database. See Def. Sum. Judg. Mem. 5; Pl. Sum. Judg. Opp. 5; Turner Decl. ¶ 4. At some point while the parties were working together to restore WHA's data, they began discussing the type of software product that WHA was looking to acquire and had a variety of meetings to go over potential ideas.

At some point in March, WHA decided to hire Corepex to develop the software programs it wanted and, on March 31, 2015, WHA and Corepex executed an Interim Independent Contractor Agreement ("Interim Agreement"), which is attached to the Complaint. See Compl. Ex. 1. Under the Interim Agreement, Corepex agreed to provide the following services to WHA: (1) "new software development support," including "working with [WHA] to identify and document priorities"; (2) "existing software development support," including "making changes

to existing software, as well as establishing change controls and procedures for updating systems in place"; and (3) "operational and technical support for recurring data loads." Id. at 7. In return, WHA agreed to pay Corepex $150/hour, based on written invoices submitted monthly from Corepex to WHA. Id. As the name suggests, the Interim Agreement was meant to be a stand-in agreement while the parties negotiated a future "Definitive Agreement." Id. at 1. The Interim Agreement specifically deferred "intellectual property ownership and access" issues to the Definitive Agreement. Id. at 4.

After executing the Interim Agreement, WHA and Corepex began working on the software development. A month after the Interim Agreement was signed, Corepex delivered a version of the ETR database to WHA for internal deployment. See Def. Sum. Judg. Mem. 10; Pl. Sum. Judg. Opp. 7; Williams Decl. [Dkt. No. 66] Ex. 4 (Corepex 30(b)(6) Deposition), at 263:2-:4. After the ETR database went live, the parties began working on a client-facing version of the software. In June 2016, the ETRC database was launched. See Def. Sum. Judg. Mem. 10; Pl. Sum. Judg. Opp. 7; Williams Decl. Ex. 4 (Corepex 30(b)(6) Deposition), at 263:5-:7.

After the ETR and ETRC software had been delivered, WHA and Corepex had a billing dispute. As a result, on October 24, 2016, counsel retained by WHA sent a letter to Corepex informing Corepex that WHA believed it had materially breached the Interim Agreement. See Williams Decl. Ex. 43. Although the parties had been working under the Interim Agreement for over 18 months, no definitive agreement had been signed. Pursuant to the terms of the Interim Agreement, WHA gave Corepex 60 days to cure the alleged breach. See id. Instead of curing the alleged breach, Corepex's counsel responded on November 14, 2016 by giving the Interim Agreement's required ten-day notice of termination, see Compl. Ex. 4. After sending this

notice, Corepex obtained copyright registration for both the ETR and ETRC programs. See id. Ex. 2 (registering ETR on November 16, 2016); id. Ex. 3 (registering ETRC on the same day).

On November 18, 2016, four days after Corepex sent notice of termination, WHA sued Corepex in state court, alleging fraud and breach of contract claims related to their billing dispute.[1] See Def. Sum. Judg. Mem. 15; Pl. Sum. Judg. Opp. 9; Sheil Decl. [Dkt. No. 68] Ex. 3. Corepex counterclaimed against WHA for breach of contract, claiming that WHA was required to pay Corepex under the outstanding invoices (the ones that WHA claimed were fraudulent). See Def. Sum. Judg. Mem. 15; Pl. Sum. Judg. Opp. 9; Sheil Decl. Ex. 4.

On January 10, 2017, Corepex filed the current action, alleging two counts of copyright infringement based on WHA's continued use of the ETR (Count I) and ETRC (Count II) software programs and one count of vicarious infringement based on WHA's allowing its clients to use the ETRC software (Count III). On September 1, 2017, the Court denied summary judgment to plaintiff but granted it to defendant, finding that the undisputed facts established that WHA had at least an implied license to continue using the ETR and ETRC software. [Dkt. No. 107].

## II. DISCUSSION

### A. Standard of Review

In a copyright infringement action, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. As part of the costs, the court "may also award a reasonable attorney's fee to the prevailing party." Id. Under § 505, fees should not be awarded "as a matter of course"; instead, a district court must "make a more particularized, case-by-case assessment" in determining

[1] The breach of contract claim has since been dismissed with prejudice, but the fraud claim has survived Corepex's demurrer. See Pl. Sum. Judg. Opp. Ex. 4.

whether to exercise its equitable discretion and impose fees. Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1985 (2016) (internal quotation marks omitted). The Fourth Circuit has identified four factors a district court should consider in determining whether it is appropriate to award fees in a particular case: "(1) the motivation of the parties; (2) the objective reasonableness of the legal and factual positions advanced; (3) the need in particular circumstances to advance considerations of compensation and deterrence; and (4) any other relevant factor presented." Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., 74 F.3d 488, 498 (4th Cir. 1996).

**B. Analysis**

The first factor the Court must consider in determining whether WHA is entitled to fees is whether Corepex's motivation in bringing this action was proper. A party is improperly motivated when it brings an action not because of its "inherent merit" but because the party seeks to use the action "to achieve a secondary gain." Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., No. 14-cv-9270, 2017 WL 3393850, at *4 (S.D.N.Y. Aug. 4, 2017).

WHA argues that Corepex's motivation in filing this action was to use this action as leverage to settle the parties' related state court litigation. In the state court litigation, WHA is seeking approximately $3 million in damages on a fraud claim, while Corepex is seeking approximately $1 million in damages on a breach of contract counterclaim. Corepex responds that it filed the current action "with the express intention of protecting its intellectual property rights." Pl. Fees Opp. [Dkt. No. 124] 9.

The Court finds little evidence to support WHA's claim that Corepex did not file this lawsuit in a good faith attempt to protect its intellectual property. As even WHA appears to concede, there is no direct evidence that Corepex was using this lawsuit as a mere tool to assert

leverage in the state court action. Moreover, as will be discussed below, Corepex's substantive claims were objectively reasonable, and its litigation conduct indicates that it believed in the strength of its own claims. Not only did Corepex have to review approximately 83,000 pages of documents produced by WHA, it also produced more than 45,000 pages of documents itself. See Def. Fees [Dkt. No. 114] Mem. 5. Although the Court does not know the extent of the attorney's fees incurred by Corepex, it is safe to assume that they were substantial; this was not an action in which the brunt of discovery and the associated costs fell on one party. Finally, even setting aside the costs of conducting the litigation, this action was not without risks for Corepex. At the summary judgment stage, WHA argued that it was the "sole author and owner of the software" at issue. Def. Sum. Judg. Mem. 17 (formatting altered). Had the Court chosen to rule for WHA on that ground, Corepex would have lost the future ability to license or sell the software to any third parties. Taken together, these facts support the conclusion that Corepex spent a significant amount of money and took a large risk in pursuing this action, belying any claim that it viewed this action only as a tool to exert pressure on WHA in the state court litigation.

The Court must also consider the objective reasonableness of plaintiff's claims. Corepex's underlying copyright infringement claims were not objectively unreasonable. As both parties agreed at the summary judgment stage, an implied license is created when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work." Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 514 (4th Cir. 2002) (quoting I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996)). Neither

party disputed that the first two elements were satisfied, but there was a vigorous dispute about the third element of this test.

Although the Court ultimately rejected Corepex's argument that it did not intend for WHA to copy and distribute the software, the argument was not without merit, primarily because the Interim Agreement specifically deferred the determination of intellectual property rights until a future "Definitive Agreement" could be developed. This aspect of the Interim Agreement established that the parties anticipated working out a structure for the intellectual property rights at the heart of this action. That they failed to clarify those rights during their relationship was what lead to this dispute. Although Corepex registered the copyrights at issue after the termination of the Interim Agreement, the registration happened before WHA initiated its state court action against Corepex, see Compl. Exs. 2-4; Sheil Decl. Ex. 3, suggesting that Corepex viewed itself as a legitimate owner of the software copyrights. Lastly, Corepex's legal position was not without some support from case law from this district. See Pl. Sum. Judg. Opp. 17-18 (citing Softech Worldwide, LLC v. Internet Technology Broadcasting Corp., 761 F. Supp. 2d 367 (E.D. Va. 2011)). Taken together, these facts indicate that Corepex had a reasonable—if ultimately unsuccessful—basis for its position in this action.

The Court must also consider whether an award of attorney's fees would promote the Copyright Act's goals of compensation and deterrence. In general, encouraging both plaintiffs and defendants to litigate claims and defenses if and only if they are meritorious aligns with these goals. See Kirtsaeng, 136 S. Ct. at 1985. Because the goals of compensation and deterrence are intertwined with the merits of the losing party's position and that party's motivation in bringing or defending the action, this factor has "rarely played an important role in the Fourth Circuit's analysis of attorneys' fees awards" and has instead generally been conflated with the

other factors. Tavory v. NTP, Inc., No. 3:06-cv-628, 2007 WL 2965048, at *1 (E.D. Va. Oct. 9, 2007). Here, both parties appear to agree that the compensation and deterrence inquiry is in fact dependent on the other factors. See Def. Fees Mem. 15; Pl. Fees Opp. 10-11. If Corepex brought a weak claim for strategic reasons, compensation and deterrence argue in favor of granting attorney's fees; if Corepex brought a reasonable claim to protect its copyright in good faith, compensation and deterrence argue against granting attorney's fees. Therefore, because it appears that Corepex was not improperly motivated and did not bring frivolous claims, awarding attorney's fees to WHA would not promote the Copyright Act's goals of compensation and deterrence.

There is substantial circumstantial evidence that Corepex was pursuing its claim in good faith, its substantive arguments were objectively reasonable, and awarding fees in this case would not promote the goals of the Copyright Act. Therefore, under the Superior Form Builders test, WHA has not shown an entitlement to fees.

III. CONCLUSION

For the reasons stated above, defendant's Motion for Attorney's Fees will be DENIED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 19th day of October, 2017.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge